IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-01949-RBJ-MJW

CARL HALL,

    Plaintiff,

v.

JOHN OLIVER, and
FEDERAL BUREAU OF PRISONS,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on defendants' motion to dismiss and motion for summary judgment. ECF Nos. 131, 132. For the reasons explained below, the motion to dismiss is granted in part and denied in part, and the motion for summary judgment is denied.

## BACKGROUND

Carl Hall is an inmate at the United States Penitentiary Administrative Maximum Facility ("ADX"). Mr. Hall filed this case pro se against the Federal Bureau of Prisons ("BOP") and several BOP personnel in September 2015, and he filed amended complaints in November 2015 and March 2016. ECF Nos. 1, 14, 40. The Court later granted Mr. Hall's motion to appoint pro bono counsel, and counsel entered an appearance in December 2016. ECF Nos. 99, 105.

Through his attorney, Mr. Hall filed his Third Amended Complaint on March 6, 2017. ECF No. 123.

The Third Amended Complaint alleges that Mr. Hall suffers from mental illness, yet defendants have placed him in near-solitary confinement with deliberate indifference to his mental health. He also asserts that defendants provide medically unnecessary antipsychotic drugs as a reward for good behavior, and they withhold the drugs as punishment. Mr. Hall alleges that this placement in ADX and inappropriate psychological care have exacerbated his mental health issues. He raises two claims for injunctive and declaratory relief: (1) an Eighth Amendment claim for failure to provide adequate mental health care, and (2) a First Amendment claim for keeping him in solitary confinement at ADX.

Defendants have filed a motion to dismiss both claims and a motion for summary judgment on the First Amendment claim. ECF No. 131, 132. The motions have been fully briefed. *See* ECF Nos. 136, 137, 138, 140.

## STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See Twombly*, 550 U.S. at 556. "The court's function on a Rule

12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## ANALYSIS

Defendants argue that Mr. Hall's Eighth Amendment claim has been released by the class action settlement in another case, and that Mr. Hall has not pled a plausible First Amendment claim or exhausted his administrative remedies before bringing this lawsuit. The Court will address each of these arguments in turn.

A. **Eighth Amendment.**

In *Cunningham v. Federal Bureau of Prisons*, several inmates at ADX sued the BOP on the grounds that its inadequate diagnosis and treatment of their mental illnesses violated the Eighth Amendment. No. 12-cv-01570-RPM (D. Colo. June 15, 2015), ECF No. 274. Late last year the parties negotiated a settlement agreement requiring the BOP to change some of its mental health policies. No. 12-cv-01570-RPM (D. Colo. Nov. 16, 2016), ECF No. 382. Judge Matsch certified two settlement classes under Rule 23(b)(2) of the Federal Rules of Civil Procedure: a "Screening Class," consisting of all inmates confined at ADX between January 17, 2017 and the end of the agreement's compliance period, and a "Treatment Subclass," covering all members of the Screening Class who have specified mental illnesses. No. 12-cv-01570-RPM (D. Colo. Jan. 17, 2017), ECF No. 398 at ¶ 4. These classes were informed of the material aspects of the case and the proposed settlement in a court-approved notice. *Id.* at ¶ 2. After conducting a fairness hearing and reviewing objections from class members, Judge Matsch approved the settlement agreement. No. 12-cv-01570-RPM (D. Colo. Dec. 29, 2016), ECF No. 391 at 5–8.

In exchange for the BOP's policy changes, the settlement agreement required class members to release related claims that they may have wanted to bring. The agreement provides:

> Plaintiffs, the members of Screening Class and Treatment Subclass, . . . hereby release, waive, acquit, and forever discharge the United States, the Federal Bureau of Prisons, and its employees in their official capacities from . . . any and all claims, causes of action, or requests for any injunctive or declaratory relief . . . that have been asserted in this litigation, or that pertain to the treatment of ADX inmates' mental health . . . .

No. 12-cv-01570-RPM (D. Colo. Nov. 16, 2016), ECF No. 382-1 at ¶ 73. The agreement also enumerates three exceptions to this legal release, stating that

in no event shall this Release be deemed to release or otherwise affect in any way: (1) any claim for money damages; (2) any claim by any inmate for a judicial determination concerning the inmate's personal mental health diagnosis; or (3) any claim based in whole or substantial part on events occurring during the Compliance Period and that does not concern one of the Monitored Initiatives.

*Id.*

The *Cunningham* settlement agreement bars Mr. Hall's Eighth Amendment claim. Mr. Hall alleges that he is incarcerated at ADX, making him a member of *Cunningham*'s Screening Class. ECF No. 123 at ¶ 12. His Eighth Amendment claim falls squarely in the release clause by seeking injunctive and declaratory relief for "failure to provide . . . adequate mental health care," which clearly "pertain[s] to the treatment of ADX inmates' mental health." *See id.* at 10. He does not escape the release's reach by demanding "money damages," requesting "a judicial determination concerning [his] personal mental health diagnosis," or stating a claim "based in whole or substantial part on events occurring" after January 17, 2017. *See id.* And, as Judge Matsch recognized, the release is legally enforceable. No. 12-cv-01570-RPM (D. Colo. Dec. 29, 2016), ECF No. 391 at 9.

Mr. Hall marshals two types of defenses. First, he levies a collateral attack on the *Cunningham* settlement, arguing that the class action did not adequately represent his interests. "The question of adequate representation can best be resolved by determining whether the interests of those who would attack the judgment were vigorously pursued and protected in the class action by qualified counsel." *Pelt v. Utah*, 539 F.3d 1271, 1286 (10th Cir. 2008) (quoting *Garcia v. Bd. of Educ.*, 573 F.2d 676, 680 (10th Cir. 1978)). Mr. Hall contends that the Court can infer inadequate representation here because "[t]he settlement merely prohibits the BOP from housing inmates" with the most serious mental illnesses in ADX, and "[t]hese policies

5

won't have any effect on Mr. Hall." ECF No. 137 at 3. In particular, the settlement agreement did not specifically address his allegation that ADX personnel improperly prescribe inmates antipsychotic medications. *Id.* at 9. But Mr. Hall undervalues the settlement agreement. The BOP agreed to several policy changes, including providing access to counseling "in all housing units at ADX," conducting periodic mental health screening of "all inmates at ADX," and "[t]aking steps to ensure the reasonable access to clinically appropriate mental health treatment for all inmates with mental illness at ADX." No. 12-cv-01570-RPM (D. Colo. Nov. 16, 2016), ECF No. 382-1 at ¶¶ 5.c.iv, .xii, .xvi, 8. These changes should benefit Mr. Hall, and do not suggest that his interests were inadequately represented in *Cunningham*.

Mr. Hall also argues that the court-approved notice failed to inform him that the settlement would affect his lawsuit. Mr. Hall alleges that the notice he received says: "[T]he settlement will prevent you from seeking certain changes to the policies for diagnosing and treating mental illness at ADX. However, the proposed settlement would not affect your ability to go to court over your own personal mental health diagnoses or for damages." ECF No. 137 at 7. I see no problem here. This notice accurately, albeit tersely, summarizes the release clause. While this summary necessarily simplifies the scope of the release, "the policies for diagnosing and treating mental illness at ADX" are certainly implicated by Mr. Hall's criticizing ADX's lack of "group therapy" and alleging that defendants "routinely house mentally ill prisoners in the ADX without proper screening or diagnosis." ECF No. 123 at ¶¶ 50, 63. And even as paraphrased, the exceptions for review of an inmate's "personal mental health diagnosis" or for damages could not be read to cover Mr. Hall's failure-to-treat claim.

In a related vein, Mr. Hall contends that his Eighth Amendment claim survives the release clause because it can be construed "to include a claim that his illness has not been properly diagnosed." ECF No. 137 at 6. I disagree. Mr. Hall's complaint accepts his mental health diagnoses without indicating that they may be incorrect. *See* ECF No. 123 at ¶ 2, 14. Instead, he bases his Eighth Amendment claim on defendants' alleged "failure to provide . . . adequate mental health care," i.e., treatment. *Id.* at 10. Mr. Hall's failure-to-treat claim thus does not qualify for the release clause's exception for a judicial determination of an inmate's mental health diagnoses.

Accordingly, Mr. Hall's Eighth Amendment claim is barred by the *Cunningham* settlement agreement's release clause. Defendants' motion to dismiss is granted on this claim.

### B. First Amendment.

Mr. Hall's second claim asserts that defendants' keeping him in solitary confinement violates his First Amendment rights. Defendants read this claim as an action for violation of his speech and associational rights, and they argue that he has not plausibly pled facts or exhausted his administrative remedies for such a claim. I am not convinced.

The Supreme Court has long held that the "constitutional right of association" protects "the formation and preservation of certain kinds of highly personal relationships." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). "[T]he constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others." *Roberts*, 468 U.S. at 619. Between the poles of close familial relationships and attenuated business contacts "lies a broad range of human relationships that may make greater or lesser claims to constitutional protection

from particular incursions by the State." *Id.* at 620. For example, some courts have extended this protection to personal friendships. *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 598 (6th Cir. 2013).

However, the Supreme Court has also stated that "freedom of association is among the rights least compatible with incarceration." *Overton*, 539 U.S. at 131. Indeed, "First Amendment associational rights . . . must give way to the reasonable considerations of penal management." *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977). These rights "may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, whether through group meetings or otherwise, possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment." *Id.*

Courts determine whether a restriction on an inmate's associational rights is reasonable by evaluating four factors: 1) whether there is a "valid, rational connection" between the government action and a legitimate government interest; 2) whether alternative means of exercising the asserted right remain open to the inmate; 3) what impact an accommodation of the right would have on guards, other inmates, and prison resources; and 4) whether there are "ready alternatives" that would accommodate the prisoner's right, such that the restriction is an "exaggerated response" to prison concerns. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

Here, defendants argue that regardless of whether Mr. Hall enjoys any First Amendment speech and associational rights, he has not plausibly pled any restriction of such rights.[1] It is true that Mr. Hall

> does not allege that he cannot send or receive mail; that he cannot make phone calls; that he cannot receive visitors; that he cannot receive publications; that he cannot access materials at the library; that he cannot watch television or listen to the radio; that he cannot participate in education programs; or that he cannot speak to staff or other inmates.

ECF No. 131 at 10. But Mr. Hall does allege that he "is locked in a cell the size of a bathroom for 23 ½ hours a day," and that "[t]he remaining 30 minutes may be spent in a 'recreation cage' in proximity to three other caged inmates." ECF No. 123 at ¶ 4. He also complains that solitary confinement has aggravated his mental health issues, which would be helped by group therapy unavailable at ADX. *Id.* at ¶¶ 2–4, 50. Near-total solitary incarceration necessarily restricts an inmate's ability to interact with others, attend group therapy and religious services, and "form[] and preserv[e]" the personal bonds that provide individuals "much of their emotional enrichment." *Roberts*, 468 U.S. at 618–19. Such restrictions may be—and typically are— reasonable in light of valid penological objectives, but they are restrictions nonetheless. *Cf. Overton*, 539 U.S. at 132, 137 (assuming that inmates retain an associational right to some

---

[1] Defendants contend that Mr. Hall defaulted on the motion to dismiss his First Amendment claim by failing to raise relevant counterarguments in his response brief. I see no authority for this view. Defendants cite an unpublished Tenth Circuit case holding that a plaintiff waived an argument "by failing to raise the issue in his initial response to the . . . motion to dismiss," but that case spoke only to "the failure to raise the issue before the magistrate judge," which, if allowed, "would frustrate the purpose of the Magistrates Act." *Cole v. New Mexico*, 58 F. App'x 825, 829 (10th Cir. 2003) (unpublished) (quoting *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992)). "All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed.); *see also, e.g.*, *Webb v. Morella*, 457 F. App'x 448, 452 n.4 (5th Cir. 2012) ("[T]he district court improperly granted the motion to dismiss for failure to state a claim solely because the [plaintiff] failed to oppose the motion."). As a result, although I expect plaintiff to use the opportunities provided to respond to all of defendants' arguments, I will consider the motion to dismiss on its merits even absent a proper response.

noncontact visits before upholding restrictions on such a right, but noting that the case may have come out differently "[i]f the withdrawal of all visitation privileges were permanent or for a much longer period"); *Cerniglia v. Cnty. of Sacramento*, No. 299-CV-01938-JKS-DAD, 2008 WL 1787855, at *11 (E.D. Cal. Apr. 18, 2008) (holding that near-total solitary confinement violated an inmate's freedom of association).

In the alternative, defendants contend that Mr. Hall has not plausibly pled that the restrictions on his purported associational rights are not reasonably related to a legitimate penological interest. Legitimate penological interests include security, rehabilitation, and deterrence. *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991). Mr. Hall argues there are no such interests here because "[a]lthough [he] may be a danger to himself, he is not a danger to other prisoners, prison staff, or the public." ECF No. 123 at ¶ 66. He explains: "Unlike many ADX prisoners, Mr. Hall is not a gang member, a psychopath, a terrorist, or an obvious danger to other prisoners. Although Mr. Hall has a continuous history of disciplinary violations, only one incident, about a decade ago, involved a physical fight with another inmate." *Id.* at ¶ 2. He admits that his conduct, such as "throwing feces at prison staff," is "at times extremely offensive," but he insists that he is "not actually dangerous," and that this antisocial behavior is a "symptom[] of his serious mental illness." *Id.* at ¶¶ 2, 19.[2] He also avers that this bad conduct is not reformed or deterred by solitary confinement, but aggravated by it. *Id.* at ¶¶ 2, 13. And he asserts: "Although [he] is still unsure of the reason for his ADX placement, it appears designed

---

[2] Defendants' citation to the public record on Mr. Hall's conviction does not refute his assertion that he is not dangerous. Mr. Hall "was arrested on January 10, 2000," *Hall v. United States*, No. 10 CIV. 58 JSR HBP, 2012 WL 6923578, at *1 (S.D.N.Y. Oct. 23, 2012), and subsequently pled "guilty to racketeering and to conspiracies to commit murder and to distribute heroin and cocaine," *United States v. Hall*, 499 F.3d 152, 153 (2d Cir. 2007). These events took place seventeen years ago, and do not obviously contradict Mr. Hall's pleading that he would pose no danger if he, like many other inmates with similar convictions, were housed in non-solitary confinement.

solely for the convenience of the Bureau of Prisons." *Id.* at ¶ 4. Viewing these allegations in the light most favorable to Mr. Hall, I conclude that he has pled sufficient facts to support a plausible inference that his placement in ADX is not reasonably related to a legitimate penological interest. Defendants' motion to dismiss Mr. Hall's First Amendment claim is therefore denied.

Next, defendants' motion for summary judgment attacks Mr. Hall's freedom of association claim for failing to exhaust administrative remedies before filing his Third Amended Complaint. The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust "such administrative remedies as are available" before bringing a lawsuit related to prison conditions. 42 U.S.C. § 1997e(a). In *Kikumura v. Osagie*, the Tenth Circuit held that "a grievance satisfies [the PLRA's] exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally." 461 F.3d 1269, 1285 (10th Cir. 2006), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *as explained in Robbins v. Oklahoma*, 519 F.3d 1242, 1246–47 (10th Cir. 2008). The *Kikumura* court aligned itself with the Seventh Circuit's holding in *Strong v. David*, which clarified further that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." 297 F.3d 646, 650 (7th Cir. 2002). "As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id.*

Mr. Hall submits two administrative remedy forms as evidence that he exhausted his administrative remedies before filing suit. *See* ECF No. 136-1. Although the parties appear to disagree about whether these forms constitute one or two appeals, *compare* ECF No. 136 at 1, *with* ECF No. 138 at 2, defendants admit that Mr. Hall's October 6, 2015 grievance was fully

exhausted, *see* ECF No. 132 at 6; ECF No. 132-1 at ¶¶ 16–18; ECF No. 140 at 1, 4–5. On that form, Mr. Hall wrote that he "do[es] not fit criteria's [sic] to be housed at ADX," that he was "no gang member" and was "not violent," and that he "really deeply need[s] neuro-psychiatric treatment" but "there are no proper programs [in ADX] to help [him] psychologically." ECF No. 136-1 at 2.

Nevertheless, defendants argue that Mr. Hall's October 6, 2015 grievance did not exhaust his administrative remedies for this case because the form does not mention any restriction of Mr. Hall's First Amendment rights. This argument misses the mark. Mr. Hall's grievance notified prison officials that he believed he was improperly transferred to ADX without regard for his mental illness. The instant case similarly requests only that defendants "provide [Mr. Hall] with adequate psychological care[] in an appropriate institution." ECF No. 123 at 13. Mr. Hall did not need to "articulate legal theories" in his administrative remedy form, and for good reason. *Strong*, 297 F.3d at 650. As the Tenth Circuit explained in *Kikumura*, "inmates typically file their grievances pro se," "BOP procedures allow prisoners just twenty days from the date of their injury to file a grievance," prisoners "are allowed less than a page and a half to write out a complaint," and "the BOP administrative remedy program does not provide inmates a procedural mechanism for amending their grievances." 461 F.3d at 1284. Consequently, even though Mr. Hall's grievance did not mention the ultimate legal theory advanced in this case, he still provided enough information about the nature of the alleged wrong to enable prison officials to investigate and address Mr. Hall's complaint before he filed suit. Defendants' motion for summary judgment is therefore denied.

## ORDER

1. Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint [ECF No. 131] is GRANTED IN PART and DENIED IN PART. Plaintiff's first claim, asserting a violation of the Eighth Amendment, is dismissed with prejudice. The motion is denied as to the second claim.

2. Defendants' Motion for Summary Judgment on the second claim [ECF No. 132] is DENIED.

DATED this 21st day of April, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge